# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0781
════════════

U-HAUL INTERNATIONAL, INC. D/B/A U-HAUL,
U-HAUL CO. OF TEXAS, INC. D/B/A U-HAUL OF DALLAS, AND
EAST FORK ENTERPRISES, INC. D/B/A JOT 'EM DOWN, INC.,
PETITIONERS,

v.

TALMADGE WALDRIP, BERNICE WALDRIP, DINAH SIMINGTON,
AND ANNE WALDRIP-BOYD,
RESPONDENTS

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════

JUSTICE LEHRMANN, dissenting.

I agree with the Court that the evidence supporting the jury's punitive damages award is legally insufficient. I also agree that there is some evidence of negligence. But I believe that the Court's conclusion that the trial court abused its discretion in admitting evidence of widespread problems with U-Haul's trucks in Canada is questionable, at best. Even if that conclusion were correct, though, I agree with the court of appeals that the court's error was harmless. Accordingly, I dissent from the Court's judgment to the extent it reverses and remands the plaintiffs' negligence claim for a new trial.

## I.

At trial, the plaintiffs, Talmadge and Bernice Waldrip and their daughters Dinah Simington and Annabeth Boyd, introduced the testimony of Brian Patterson. Patterson, president of the Ontario Safety League, testified that inspections of U-Haul trucks entering Canada revealed a "systemic disregard for public safety in the maintenance of vehicles in the Province of Ontario." According to Patterson, an investigation by various Canadian governmental entities detected problems with the brakes in more than fifty percent of U-Haul's trucks. Based upon our decision in *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131 (Tex. 2004), the Court concludes that the trial court abused its discretion in admitting Patterson's testimony, and that its admission probably resulted in a wrongful judgment. ___ S.W.3d at ___. I respectfully disagree.

## A. Doubtful that the trial court abused its discretion

First, it is questionable whether the trial court abused its discretion in admitting Patterson's testimony. Unlike the evidence that was improperly admitted in *Nissan*, the Canadian evidence was at least arguably probative of the plaintiffs' theory that Waldrip's injury resulted from U-Haul's inherently deficient and haphazardly followed maintenance procedures. *See Nissan*, 145 S.W.3d at 140–42. Rule 406 of our rules of evidence expressly recognizes that "[e]vidence of . . . the routine practice of an organization . . . is relevant to prove that the conduct of the . . . organization on a particular occasion was in conformity with the . . . routine practice." TEX. R. EVID. 406.

In *Nissan*, the plaintiffs asserted products liability claims against a car's manufacturer after the vehicle unexpectedly accelerated. *Nissan*, 145 S.W.3d at 136. In particular, they claimed that the acceleration was caused by a defective throttle cable or boot, but the allegedly faulty parts had been removed and destroyed after the accident. *Id.* At 134, 136. We held that the trial court abused

2

its discretion by admitting a database of more than 700 incidents of unintended acceleration, the testimony of four witnesses who had experienced the phenomenon, and several narrative reports regarding other incidents of unintended acceleration without proof of similarity. *Id.* at 144. In doing so, we emphasized that a claimant's testimony that a vehicle unintentionally accelerated, without more, cannot prove that a defect caused the acceleration. *Id.* at 137. The plaintiff, we said, "had to present evidence that her . . . car was defective, not just that other owners experienced unintended acceleration." *Id.* at 138. We determined that the disputed evidence was improperly admitted because there was no evidence that most of the incidents were sufficiently similar, and the sheer volume of reported incidents likely caused confusion and prejudice. *Id.* at 141, 147. Clearly, evidence of dissimilar incidents of unintended acceleration is irrelevant to whether a particular vehicle accelerated as the result of a defect. But evidence that more than fifty percent of U-Haul's trucks entering Canada had improperly functioning brakes is indicative of routinely shoddy maintenance practices.[1]

## B. The error was harmless.

Even if the trial court did abuse its discretion in admitting Patterson's testimony, the error was harmless. As the Court observes, there is no specific test for determining whether the erroneous admission of evidence probably resulted in the rendition of an improper judgment. \_\_\_\_ S.W.3d at \_\_\_\_ (citing *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992)). Instead, a reviewing court must examine the entire record "from voir dire to closing argument, considering the 'state of the evidence,

---

[1] In *Services Corp. International v. Guerra*, also cited by the Court, we held that the trial court abused its discretion in admitting evidence of other lawsuits against a cemetery company because there was no evidence that double-selling lots and clandestinely moving bodies were part of a system, scheme, or plan. 348 S.W.3d 221, 236 (Tex. 2011). Here, in contrast, U-Haul's inspection and maintenance procedures were formal and intended to be applied system-wide. The fact that they were not followed for such a large percentage of vehicles entering Canada supports the plaintiffs' evidence that they were not followed with respect to the truck in this case.

3

strength and weakness of the case, and the verdict.'" *Reliance Steel & Aluminum Co. v. Sevcik,* 267 S.W.3d 867, 871 (Tex. 2008) (quoting *Standard Fire Ins. Co. v. Reese*, 584, S.W.2d 835, 841 (Tex. 1979)). "[W]hether erroneous admission is harmful is more a matter of judgment than precise measurement." *Nissan*, 145 S.W.3d at 144. In exercising that judgment, courts should bear in mind that "a jury's decision is not to be tampered with lightly." *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210–11 (Tex. 2009) (parenthetically describing *Wal–Mart Stores, Inc. v. Seale,* 904 S.W.2d 718, 722 (Tex. App.—San Antonio 1995, no writ)). My review of the record leads me to conclude that any error the trial court may have committed in admitting Patterson's testimony does not warrant a new trial. The jury's verdict did not turn on that evidence; to the contrary, there was abundant evidence of U-Haul's negligence.

First, erroneous admission of evidence "is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Reliance Steel*, 267 S.W.3d at 873 (footnote omitted). "[T]he complaining party [must] demonstrate that the judgment turns on the particular evidence admitted." *Nissan*, 145 S.W.3d at 144. U-Haul has not met that burden.

Patterson's testimony was both cumulative and far overshadowed by other evidence of U-Haul's negligence. There was evidence that U-Haul had more than 4,000 trucks with more than 200,000 miles on them. Moreover, the evidence in this case shows that, after the truck had been rented by one customer, U-Haul had been made aware that the parking brake on the truck Waldrip later rented had not been working properly and the brake light was staying on. The brake light was repaired, yet the problem with the parking brake itself was not. In his opening statement, U-Haul's attorney expressly admitted that the problem should have been fixed, but was not, due to a

4

"miscommunication." Joseph Shoen, U-Haul International's chairman of the board, acknowledged that an inoperative parking brake would be a "material shortcoming" and would be U-Haul's fault. He also acknowledged that U-Haul might permit vehicles with expired safety certifications, significant components of U-Haul's safety program, to be rented "[a]t the discretion of the person doing the renting."

The Court's determination that the trial court's admission of Patterson's testimony was harmful is based almost entirely on the emphasis supposedly placed upon it by Waldrip's counsel. ___ S.W.3d at ___. But Waldrip's counsel's efforts to gain the admission of Patterson's testimony were far from extraordinary; Waldrip's counsel dispassionately explained his view of its relevance to the trial court. Waldrip's counsel did not mention the Canadian evidence in conducting voir dire or in his opening statement. And any reference to it in his closing argument was elliptical, at best. He did not mention Patterson's name or expressly refer to the Canadian evidence. Instead, he merely alluded to U-Haul's "rotten fleet." That reference could as easily refer to the evidence of the age and mileage of U-Haul's fleet and its slipshod maintenance procedures. In light of the record as a whole, that vague reference does not justify casting aside a three-week jury trial.

The emphasis placed upon the Canadian evidence by Waldrip's counsel in questioning Lyn Buck is equally insignificant. Buck's testimony occupies 155 pages of the record. She was questioned at length about U-Haul's maintenance practices and safety procedures. The plaintiffs' examination of her focused on whether U-Haul's procedures were faulty for not requiring leasing agencies to test vital safety systems on returned trucks before they were rented again, and the fact that several renters before Waldrip had experienced and reported problems with the truck's parking brake. Her testimony regarding the Canadian evidence spans less than three and a half pages.

5

During that brief interval, she testified that Patterson's statement that more than fifty percent of the trucks entering Canada had defective brakes was shocking, but questionable, and that Schoen had knowledge of the reported problems. Patterson's testimony was no more emphasized in the plaintiffs' questioning of Buck than it was in closing argument.

In other cases where we have required a new trial, the conclusion that the case turned on erroneously admitted evidence rested on much firmer ground than the Court finds here. In *Nissan*, for example, we were persuaded that the erroneous admission of evidence of other incidents of unintended acceleration was harmful in large part because of the court of appeals' reliance on the large volume of incidents. *Nissan*, 145 S.W.3d at 146–47. "As the experienced justices of the court of appeals made this mistake, it is probable that the jurors did as well." *Id.* at 147. We also noted that the plaintiffs' counsel had mentioned the evidence "[a]t every opportunity." *Id.* at 144. In *Reliance Steel*, the fact that the jury awarded more damages than the evidence supported or that the plaintiff's counsel asked for strongly suggested that improperly admitted evidence of the defendant's $1.9 billion in gross sales probably led to the rendition of a wrongful judgment. *Reliance Steel*, 267 S.W.3d at 871–73; see also *Coastal Oil & Gas Corp. v. Garza Energy Trusts*, 268 S.W.3d 1, 25 (Tex. 2008) (noting that the jury's award of more than three times the damages plaintiff requested showed that erroneous introduction of an internal memo was harmful). And in *In re M.P.A.*, 364 S.W.3d 277, 289 (Tex. 2012), rather than a single vague allusion to improperly admitted evidence, counsel referred to it throughout closing argument. *See also Coastal Oil & Gas*, 268 S.W.3d at 24–25 (noting that erroneously admitted internal memo was mentioned by both sides throughout their closing arguments). If the admission of Patterson's testimony was error, its impact does not compare with these cases.

## II.

Regardless of whether the trucks described in Patterson's testimony were similar to the ones that injured Waldrip or what Canada's safety standards require, the fact that more than half of them had brake problems is probative of U-Haul's routine, systemic disregard for its own maintenance policies. For that reason, I think that it is doubtful that the trial court abused its discretion in admitting the evidence. Even assuming it was error, however, the error was harmless in light of the entire record. I respectfully dissent.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 31, 2012

7